Roy R. Romer State Treasurer State Capitol Denver, Colorado 80203
Dear Mr. Romer:
This letter is written in response to one of the inquiries raised in a letter dated April 4, 1979 from Dick R. Murphy, director of Treasury operations. That letter requests an opinion concerning practices of the Treasury Department which have been questioned in the pre-release copy of the state auditor's report on the Treasury Department for the fiscal year 1978 ("the audit report"). This letter will consider questions raised in the audit report concerning the Mineral Leasing Fund.
QUESTIONS PRESENTED AND CONCLUSIONS
The audit report states that in the fiscal year ended June 30, 1978, delays occurred in the distribution of moneys from the Mineral Leasing Fund. The audit report then inquires whether interest should have been paid to the Mineral Leasing Fund "if distributions are not made on a timely basis" and whether the treasurer has incurred any liability for nonpayment of past interest. Mr. Murphy's letter raises these questions and asks, in addition: (1) what is a timely basis for distribution; (2) is any liability affected by the fact delay was caused by (a) change in the federal fiscal year and (b) implementation of new state rules and regulations; (3) may funds to be distributed from the Mineral Leasing Fund to the Public School Fund be transferred prior to December 31 of each year?
 My conclusion is that the treasurer is responsible for the distribution of these funds promptly upon receipt. If a delay in distribution occurs, and interest is earned on these funds, it should be credited to the Mineral Leasing Fund. The treasurer is not liable for interest which is not actually earned.
ANALYSIS
The Mineral Leasing Fund was created by C.R.S. 1973,34-63-102(1)(a) for the deposit of moneys received from the federal government as the state's share of sales, bonuses, royalties, and rentals of public lands within Colorado ("federal leasing moneys"). That provision of the statute states as follows:
 On or after January 1, 1977, all moneys, including any interest earned therefrom, now held or to be received by the state treasurer pursuant to the provisions of the federal mineral lands leasing act of February 25, 1920, as amended, except those moneys described in section 34-63-104, shall be deposited by the state treasurer into a special fund to be known as the mineral leasing fund, which is hereby created, for use by state agencies, public schools, and political subdivisions of the state as described in this section for planning, construction, and maintenance of public facilities and for public services.
(emphasis added).
Ordinarily, interest derived from the deposit and investment of state moneys is credited to the general fund in the absence of express statutory authority otherwise. C.R.S. 1973, 24-36-114. The statutory provision quoted above does provide such express statutory authority to credit to the Mineral Leasing Fund "any interest earned" on moneys in that fund, if in fact such interest is earned.
The treasurer is not required to invest moneys deposited in the Mineral Leasing Fund, although if distributions from that fund are delayed he may invest those moneys pursuant to his authority under C.R.S. 1973, 24-36-109 and 24-36-113. Consequently, if interest was earned on federal leasing moneys while on deposit in the Mineral Leasing Fund, that interest should be credited to the Mineral Leasing Fund, but the treasurer is not liable for any interest not actually earned.
C.R.S. 1973, 34-63-102 further provides for the distribution of federal leasing moneys from the Mineral Leasing Fund in the following manner:
 1. Twenty-five percent shall "upon receipt" be paid into the Public School Fund;
 2. Fifty percent shall "upon receipt" be paid to specified counties subject to a ceiling on the amount paid any county in any calendar year;
 3. Any balance of the 50 percent remaining after payment to counties as described above, "shall be paid by the state treasurer, on or before the last day of December of each year, into the Public School Fund . . .;"
 4. Ten percent shall "upon receipt" be paid into the Colorado Water Conservation Board Construction Fund;
 5. Fifteen percent shall "upon receipt" be paid into the local government Mineral Impact Fund.
Pursuant to this formula, the timely basis for distributing moneys from the Mineral Leasing Fund is "upon receipt", except for the unpaid balance of moneys due counties. That amount is to be paid to the Public School Fund on or before December 31 of each year. Congress has provided that federal leasing moneys be distributed from the United States Treasury to Colorado "as soon as practicable after March 31 and September 30 of each year. . . ." 30 U.S.C.A. § 191. The federal fiscal year was changed in 1976 to the above-quoted dates from the previous distribution dates of December 31 and September 30. See Pub.L.94-273, 1976 U.S. Code Cong. and Adm. News, p. 690.
SUMMARY
It is my opinion, based on the above provisions of law, that the treasurer is responsible for distributing federal leasing moneys promptly after they are received from the federal government. If delay occurs, for whatever reason, and interest is earned on federal leasing moneys while on deposit in the Mineral Leasing Fund, that interest should be credited to the Mineral Leasing Fund. If no interest is earned, the treasurer is not liable for what might have been earned.
Please feel free to contact me if you have additional questions regarding this matter.
Very truly yours,
 J.D. MacFARLANE Attorney General
PUBLIC FUNDS INTEREST MINERAL RIGHTS TREASURER, STATE
30 U.S.C. § 191
C.R.S. 1973, 34-63-102(1)(a) C.R.S. 1973, 24-36-114
C.R.S. 1973, 24-36-109
C.R.S. 1973, 24-36-113
TREASURY, DEPT. OF All Other Areas
Interest earned on federal leasing moneys received from federal government should be credited to the Mineral Leasing Fund. However, the state treasurer is not liable if there is a delay in distributing funds, but no interest is actually earned.